***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. Having reviewed the competent evidence of record, the Full Commission affirms the Deputy Commissioner's Opinion and Award with some modification.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. RSKCO is the carrier on risk.
4. A Form 22 was submitted from which an average weekly wage may be determined.
5. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1. This contains documentation from Neal S. Taub, M.D., Richard Eisenoff, Physical Therapy Records, and Carolinas Healthcare.
6. Employment records from Yellow Freight Line were stipulated into evidence as Stipulated Exhibit 2.
7. Employment Security Commission unemployment payment records were stipulated into evidence. Plaintiff's total unemployment for a period of January 10, 2000 through March 25, 2000 was $2,953.00.
8. The issues before the undersigned are: (i) whether plaintiff has met his burden proving that he was disabled following the November 4, 1999 injury; (ii) if so, what compensation, if any is due plaintiff; (iii) whether plaintiff constructively refused suitable employment by engaging in conduct which resulted in his termination by defendant-employer as indicated by the Seagraves standards; (iv) whether plaintiff is entitled to attorney's fee pursuant to N.C.G.S. § 97-88.1; (v) whether Dr. Taub is authorized as the treating physician?
 ***********
Based upon all the competent evidence adduced at the evidentiary hearing, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the evidentiary hearing, plaintiff was forty years old. Plaintiff began his employment with defendant-employer in October 1995.
2. Plaintiff worked for the defendant as a carton tech until January 1, 2000. Plaintiff's job duties included loading and unloading cardboard cartons which were used in the production to load potato chips. Plaintiff had a poor attendance record throughout the course of his employment.
3. Jud Taylor, Carton Resource Supervisor, indicated plaintiff was initially counseled for his excessive absenteeism in January 1998. Plaintiff indicated one of the problems leading to his absenteeism was a problem with gout.
4. Mr. Taylor informed plaintiff that he would be able to apply for family medical leave. Mr. Taylor also advised plaintiff that if there were days of missed work for which he should have been given family medical leave credit that plaintiff should complete a form noting those days and the absences would be removed from his attendance record.
5. Plaintiff never returned that form. Plaintiff has no medical documentation to support his being out of work for gout.
6. On January 30, 1998, plaintiff was told that his absenteeism was too high and that, unless he achieved a 95% attendance rate, he would be placed on a special attendance program.
7. On March 21, 1998, plaintiff received an oral warning regarding his attendance.
8. On May 26, 1998, plaintiff received another oral warning as to his attendance.
9. On August 17, 1998, plaintiff was placed on a special attendance program. Under the terms of this program, plaintiff was required to keep his attendance at 98% or higher.
10. On February 26, 1999, plaintiff was informed his attendance rate from August 1998 through February 26, 1999 was 83%. This was well below the required 98% attendance. Plaintiff was placed on a final special attendance status at that time.
11. At the time plaintiff was placed on the final special attendance program, Greg Smith, Human Resources Director at Frito-Lay, informed plaintiff that he could receive family medical leave relating to his pre-existing gout and this time would not be counted against him in regards to his attendance calculations.
12. On October 7, 1999, plaintiff was told that his family medical leave for 1999 had expired.
13. On November 5, 1999, plaintiff felt a jerk in his lower back while pushing a pallet down a conveyor. Plaintiff reported this problem to his supervisor, Lonnie Tucker. Plaintiff informed Mr. Tucker he felt he would be fine and did not need to go to a doctor.
14. After Mr. Tucker's shift ended, Jeff Grevious came on shift as plaintiff's supervisor. Plaintiff asked for permission to go home and Mr. Grevious approved plaintiff's request.
15. Plaintiff did not work a full shift on November 4, 1999 and did not work on November 5, 1999 because of two requested flex days. Flex days are vacation days which employees may take any time so long as they are scheduled at least one week in advance.
16. Plaintiff was not scheduled to return to work until November 10, 1999. On November 10, plaintiff returned to work and worked his normal schedule.
17. Plaintiff worked his normal schedule without restriction from November 10 through November 13, 1999.
18. On November 15, 1999, plaintiff attended a scheduled appointment with defendant-employer's in-house physical therapist, Donna McGee. Plaintiff complained to Ms. McGee about pain in both legs.
19. Plaintiff exhibited no muscle weakness, straight leg raise test was negative, and he had no reflex abnormalities.
20. Plaintiff indicated to Ms. McGee that his pain had improved since the injury and rated his pain as two out of ten. Based upon the information provided by plaintiff and the testing given by Ms. McGee, Ms. McGee determined that plaintiff did not have a neurological problem or a need for referral to a physician at that time.
21. Plaintiff had a follow-up appointment with Ms. McGee but failed to attend and did not attempt to reschedule another appointment. Plaintiff could have signed up for another appointment if he had so desired. Plaintiff did not request an appointment with a physician.
22. On November 19, 1999, plaintiff had a sick day and indicated on his attendance schedule he had a doctor's appointment for that day. The nature of the doctor's appointment is unclear.
23. On November 20, 1999, plaintiff had another flex day.
24. On November 26, 1999, and November 27, 1999, plaintiff called in sick but did not have doctor notes for these absences as required.
25. Because of his unexcused absences on November 26, 1999 and November 27, 1999, plaintiff was given Decision Making Leave on December 1, 1999, and December 2, 1999. This is a time for an employee to consider whether he seriously wants to keep his job.
26. Following the decision-making leave days, plaintiff was given a "final chance" contract to review and sign. This contract explained plaintiff's attendance status and required him to present a physician's note for any future unscheduled absences. Plaintiff refused to sign the contract but admitted that he understood and read the contract at the time of the trial.
27. On December 3, 1999, plaintiff returned to work and completed a full shift.
28. On December 4, 1999, plaintiff worked a half shift and was allowed to go home. The lost time on December 4, 1999, did not enter into the termination decision based on absenteeism but did result in an oral warning for substandard job performance.
29. Plaintiff worked without restriction or complaint from December 5, 1999, through December 22, 1999. Plaintiff contends he requested to be sent to a physician, but his requests and defendant-employer's responses are unclear, particularly given that defendant-employer did refer plaintiff to Ms. McGee, and plaintiff did not follow up with her or ask her for a physician referral.
30. Plaintiff received no medical attention for his back from the time he saw Ms. McGee until he saw Richard Eisenoff, M.D., on December 8, 1999. Dr. Eisenoff examined plaintiff and diagnosed low back pain, likely from a strain. Dr. Eisenoff did not indicate there was anything that would prohibit plaintiff from working full time and did not place work restrictions on plaintiff or prescribe medications for his back.
31. Plaintiff saw Dr. Eisenoff one more time on December 20, 1999. At that time, Dr. Eisenoff did not feel plaintiff's condition warranted further evaluation. In fact, plaintiff informed Dr. Eisenoff that his back was improved but occasionally bothersome.
32. Plaintiff did not return to see Dr. Eisenoff or any other physician until April 17, 2000.
33. On December 23, 1999, plaintiff left work after completing half of his shift and without presenting a doctor's note. As a result of his absence for the half day on December 23, 1999, plaintiff was terminated for violating the terms of his final chance contract. Any employee on a special attendance program would have been fired under the circumstances.
34. At the time of his termination, plaintiff was working full unrestricted duty at his regular job.
35. Plaintiff was also employed by Yellow Freight as a truck mechanic for approximately ten years. Plaintiff worked one day per week for eight hours for Yellow Freight. Plaintiff performed whatever work was required.
36. Plaintiff stopped working for Yellow Freight in January 2000.
37. Plaintiff contends he sought employment from January 2000 to April 20, 2000. Plaintiff applied for jobs at a plating shop owned by friends and looked for jobs in Atlanta, however, plaintiff was unable to remember the names of businesses to which he applied.
38. Plaintiff asserts he also looked for work while visiting his family in Mississippi.
39. Plaintiff asserts he was unable to find work because of physical limitations and work being unavailable. However, there is no medical documentation supporting any physical limitations during this time.
40. On April 17, 2000, plaintiff reported to the emergency room at Carolinas Medical Center with complaints of low back pain which he related to the November 4, 1999, injury and also indicated to the emergency room that he had been working part time servicing trucks.
41. On May 25, 2000, plaintiff returned to Carolinas Medical Center complaining of back pain. The note states that he had a history of low back pain after "injury on job one month ago", doing well until "strain" tonight. Although this note could be construed to refer to the emergency room visit one month earlier, the note tends to indicate a new injury during a time when plaintiff does not deny that he was working part-time servicing trucks.
42. Plaintiff began treatment with Stephen Taub, M.D., on July 13, 2000. Dr. Taub ordered an MRI and a bone scan which confirmed degenerative disc disease and arthritis. Although Dr. Taub opined on direct examination that plaintiff's November 1999 injury may have been a contributing cause to the symptoms that Dr. Taub was providing care in 2000, Dr. Taub on cross-examination conceded that he had not seen the April and May 2000 Emergency Room notes. Dr. Taub's opinion was based solely on information provided by plaintiff and his attorney that plaintiff continued to have pain and went to the emergency room for flare-ups.
43. Plaintiff was terminated for excessive absenteeism that was unrelated to his injury by accident of November 4, 1999.
44. The greater weight of the evidence is that plaintiff did not have a significant injury on November 4, 1999, but, at most, strained his back on that date and did not require therapy or treatment beyond that provided by Ms. McGree and Dr. Eisenoff.
45. Plaintiff worked without restriction an entire month following his injury.
46. Plaintiff did not seek any medical treatment for his back from December 20, 1999, until April 17, 2000, at which time he indicated he was working part-time servicing trucks.
47. There is insufficient evidence of record to determine by its greater weight that plaintiff was disabled as a result of his back strain on November 4, 1999.
48. Plaintiff was terminated for his excessive absenteeism from work. Plaintiff was not terminated as result of his workers' compensation claim.
49. Dr. Taub is not designated as plaintiff's treating physician for the November 4, 1999, injury.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. The Industrial Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. G.S. §97-86; Young v. Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912
(2000); Adams v. AVX Corp., 349 N.C. 676, 680, 509 S.E.2d 411, 413
(1998). Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions removed from the ordinary experience of laymen, only an expert witness can give a competent opinion as to the nature of and the cause of the injury. Youngv. Hickory Business Furniture, supra; Click v. Pilot Freight Carriers,Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Expert opinion that rests on speculation and conjecture, or on facts that have been disproved, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of an injury or disease. Young v.Hickory Business Furniture, supra; Dean v. Carolina Coach Co.,287 N.C. 515. 522. 215 S.E.2d 89, 94 (1975); See also Daubert v. MerrellDow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993).
2. Plaintiff sustained an injury by accident to his back on November 4, 1999. G.S. § 97-2(6).
3. Plaintiff received appropriate medical attention relating to this injury from the in house physical therapist and Dr. Eisenoff. G.S. § 97-25.
4. Plaintiff has failed to prove he has any further disability that would entitle him to compensation or further medical treatment relating to his injury by accident on November 4, 1999. G.S. §§ 97-25, 97-29;Seagraves v. Austin Company, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Under the law, plaintiff's claim for additional compensation and medical treatment is DENIED.
2. Each side shall bear its own costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER